IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

MICHAEL GREEN,                    )
                                  )
    Plaintiff,                    )
                                  )
v.                                )    No. 2:07-cv-280
                                  )
EXIDE TECHNOLOGIES, INC.          )
                                  )
    Defendant.                    )

## **MEMORANDUM OPINION**

This civil action is before the court on the defendant's motion for summary judgment [doc. 15]. The plaintiff has filed a response [doc. 19], and the defendant has filed a reply brief [doc. 22]. The court finds that oral argument on the motion is not necessary and the motion is ripe for the court's consideration. For the reasons discussed below, the defendant's motion for summary judgment will be granted.

In his complaint, the plaintiff contends that the defendant violated his rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12112, 12111, and 12117. The plaintiff claims that the defendant failed to hire him or discharged him because it regarded or perceived him as having a mental disability which disqualified him from any type of manual labor. The plaintiff seeks compensatory and punitive damages and reinstatement.

## Factual Background

In November 2005, the plaintiff went to Exide Technologies, Inc., where his wife was employed, to apply for a job involving "any type of manual labor." The plaintiff and his wife met Human Resources manager Barbara Edwards in the lobby. He was asked to enter some information on a computer, but the plaintiff had "extreme difficulty" completing the test because he is unable to read and write. Ms. Edwards allegedly told the plaintiff that she wanted "smarter, more intelligent" people at Exide. Several days later, Judy Johnson, another Exide employee, told the plaintiff's wife that the plaintiff should report for new employee orientation in December 2005.

The plaintiff attended three days of orientation and Exide trainers helped the plaintiff with the written instructions and materials as necessary. Ms. Edwards participated in the orientation and informed the plaintiff that he was being hired by Exide. Ms. Johnson allegedly told the plaintiff that he would be operating the "tennant machine."

The plaintiff says that on the third day he and other new hires had been fitted with badges, boots and respirators and they were waiting for lockers to be assigned. Ms. Johnson told the defendant that he was wanted in the office. Joe Bolea, an Exide supervisor, arrived and told the plaintiff that he was "fired." Bolea refused to give the plaintiff a reason. The plaintiff claims that Bolea yelled at him and tore the badge off the plaintiff's shirt. The plaintiff says that he told Mr.

Bolea and Ms. Edwards that he was willing to do any job they had, but the plaintiff was told he was being discharged. The plaintiff began to cry, and he returned the boots and respirator. His wife quit her job because of the way he was treated. The plaintiff admits that his inability to read and write was not mentioned as a reason for his discharge. The plaintiff also admits that Bolea told him that someone else had been hired for the tennant machine.

The defendant recognizes that the plaintiff's version of the facts controls the issues for purposes of the summary judgment motion; however, the defendant has a different view of the facts surrounding the plaintiff's discharge. The defendant says that although the plaintiff was told that he was being hired for the tennant machine, that job was already taken. When Bolea told him that the position was not available – not that he was fired – the plaintiff became very upset and belligerent before he left Exide. It was only after he became upset that Exide withdrew its offer of employment.[1]

The plaintiff claims that the defendant regarded him as disabled because he is unable to read and write and because he is a slow learner. The plaintiff's wife, however, testified at her deposition that the plaintiff "learns faster than anybody" she's known. There is no evidence that the plaintiff is incapable of

---

[1] It is not clear from the record whether the plaintiff's participation in orientation meant that he was hired, and then discharged, or if he was not hired because he did not complete orientation. Since either of these scenarios is a type of adverse employment action under the ADA, for simplicity's sake the court will refer to the action as a discharge.

3

learning to read. The plaintiff also claims a mental disability related to the stress and nervousness caused by Exide when they did not hire him.

## Legal Discussion

Under Rule 56 of the Federal Rules of Civil Procedure, a motion for summary judgment should be granted, "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." As the Supreme Court stated in *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986), this "plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Thus, the moving party's burden may be discharged by showing that there is an absence of evidence to support the non-moving party's case. *Id.* at 325. In order for a non-moving party to defeat a motion for summary judgment, the non-moving party must come forward with persuasive evidence to support his or her claim or demonstrate that there is a genuine material factual dispute; that is, the non-moving party must produce evidence on which the jury could reasonably find for the non-moving party. *Id.* at 324.

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in

4

regard to job application procedures [or] the hiring . . .of employees." 42 U.S.C. § 12112(a). In order to establish discrimination based on a disability, the plaintiff must first establish a prima facie case consisting of five factors: (1) that he is an individual with a disability; (2) that he was otherwise qualified for the position for which he was hired with or without reasonable accommodations; (3) that he suffered an adverse employment action; (4) that the employer knew of the disability; and (5) a nondisabled person replaced him. *See Nance v. Goodyear Tire and Rubber Co.*, 527 F.3d 539, 553 (6th Cir. 2008). A plaintiff may establish his prima facie case either with direct and/or indirect evidence. *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1105 (6th Cir. 2008).

### *Is the plaintiff an individual with a disability?*

The threshold question in any disability discrimination case is whether the plaintiff is disabled as that term is defined in the ADA.[2] The ADA defines disability as:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
> (B) a record of such an impairment; or
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). In this case, the plaintiff "is not contending that his illiteracy, in and of itself is an ADA-protected disability." Doc. 19, Plaintiff's

---

[2] The court notes that the definition of disability in the ADA was modified by Congress effective January 1, 2009. However, the Sixth Circuit has held that the modifications are not retroactive and do not apply to pre-amendment conduct. *Milholland v. Sumner County Bd. of Educ.*, 569 F.3d 562, 567 (6th Cir. 2009).

5

Response. Rather, the plaintiff is arguing that Exide "regarded" him as having a mental disability or as being mentally retarded.

"[A]n individual may fall into the definition of one regarded as having a disability if an employer ascribes to that individual an inability to perform the functions of a job because of a medical condition when, in fact, the individual is perfectly able to meet the job's duties." *Ross v. Campbell Soup Co.*, 237 F.3d 701, 706 (6th Cir. 2001). One of the ways in which individuals may fall within the statutory definition of "regarded as having such an impairment" is when an employer mistakenly believes that "one has a substantially limiting impairment that one does not have." *Sutton v. United Air Lines*, 527 U.S. 471, 489 (1999).

In support of his argument that the defendant mistakenly believed that the plaintiff had a disability, the plaintiff has submitted the defendant's Statement of Position sent to the EEOC after the plaintiff filed his charge of discrimination. The plaintiff claims that some of the statements in this document support his position. Specifically, the plaintiff points to statements the defendant made concerning the plaintiff's conduct at Exide at the time he was discharged, that is, that the plaintiff became "irate," and "belligerent" and "began to shout obscenities." The plaintiff claims that these statements show that the

6

defendant believed that the plaintiff was suffering from a mental disability.[3]

The problem with this argument is that the plaintiff denies that any of this happened, and the court is required to view the evidence in the light most favorable to the plaintiff as the nonmoving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The plaintiff's sworn affidavit submitted with his response states only that he began to cry when Bolea told him that he was fired and that  Bolea was the person yelling and being aggressive (tearing off the plaintiff's badge).

The plaintiff cannot use facts which he denies as a basis for proving that he is disabled or for creating an issue of fact.  As the defendant points out, the most that can be said about the statements it made in the EEOC response is that the company perceived that the plaintiff acted inappropriately when he was told that the tennant machine position was not available.  An angry outburst, which the plaintiff denies even happened, does not qualify as a disability under the ADA.  29 C.F.R. § 1630.2(h) App. (definition of disability "does not include common personality traits such as poor judgment or a quick temper where these are not symptoms of a mental or psychological disorder").

---

[3] In his response to the motion for summary judgment, the plaintiff extensively quotes language from *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146 (2000).  However, the court finds that *Reeves* does not support the plaintiff's argument.  The quoted language was directed at the pretext stage of the *McDonnell-Douglas* burden shifting analysis, not whether Reeves was able to establish her prima facie case.

7

There is no other evidence in the record that any Exide employee said anything to the plaintiff on the day he was discharged related to any perceived mental instability or retardation.  The court finds that the plaintiff has not met his burden of establishing a prima facie case of disability discrimination because he has not shown that he meets the threshold requirement of being disabled as defined in the statute.

## Conclusion

For the reasons stated above, the defendant's motion for summary judgment will be granted.  An order reflecting this opinion will be entered.

ENTER:

    *s/ Leon Jordan*
United States District Judge